10978.  DOWDELL *v.* THE STATE.

BROYLES, C. J. 1. The evidence connecting the defendant with the larceny charged was entirely circumstantial in its character, and under all the facts of the case—especially the abundant unimpeached testimony supporting the theory of his innocence—was not sufficient to exclude every reasonable hypothesis save that of his guilt. The court, therefore, erred in overruling the motion for a new trial.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*

DECIDED DECEMBER 9, 1919.

Accusation of larceny; from city court of Oglethorpe—Judge Greer. September 29, 1919.

Jim Dowdell was charged with the larceny of seed-cotton, alleged to have been stolen from the gin-house of R. H. Stubbs. On the trial Stubbs testified: "In this gin-house I had stored several bales of loose seed-cotton; it was packed in stalls. The cotton in some of these stalls was picked the first of the cotton season, and remained there without being ginned. It was clean and not

discolored. . . On the morning of the 16th of December, 1918, I noticed cotton scattered about in front of the gin-house and along the path leading from the gin-house across the field to the road. I went in the gin-house and found that some of my seed-cotton was missing, some from out the stall in which the cotton which had been picked the first of the season was stored. I followed this path across the field and found cotton all along on the ground and hanging on the bushes on the side of the path. I followed the path to the road and then up the road a good ways, about a mile or more in all. I found cotton on the ground as far as I went. I then went back to the house and phoned the sheriff about it and asked him to come and bring his dogs. The sheriff . . arrived in a little while with his dogs; he turned the dogs loose around the gin-house; at first they ran about and went off in several directions for short distances; finally they struck a trail along the path I had followed, and followed it to the road, where we saw where a wagon had been loaded and turned around, and some wagon-tracks and cotton in the road. . . The cotton which I missed was short-staple cotton, Toole variety, . . white cotton, picked the first of the season; this cotton belonged to me and I missed about 400 pounds of it, value about $40. The defendant, Jim Dowdell, lived about five miles from the gin-house. The sheriff put the dogs in his car and we all followed the wagon-tracks, and the horse was shod all around, and they went to Jim Dowdell's house, where we found Jim and a wagon and a horse in the lot, shod all around, and several sacks of cotton stacked on his front porch. I don't remember how many sacks of cotton there were on his porch,—about eight or ten. We examined this cotton and we found that some four sacks of it was just like the cotton I had missed from the gin; it was white seed-cotton, short staple and Toole variety. It looked just like my cotton. I would swear that it was the cotton which I missed out of my gin-house. . . We found, tracking across the field, that some which had dropped out on some weeds and trash had been picked up, and in the mouths of the sheets we found handfuls of cotton with the same sort of trash on it, and the rest of the cotton on his porch was colored, like it had been picked late in the year and after being rained on. . . I don't know of anybody else that plants the Toole variety cotton in my section

of the country. I don't think anybody else does but me, but would not say for certain."

The sheriff's testimony as to what occurred after he took his dogs to the gin-house was substantially the same as that of Stubbs. He testified that the dogs were bloodhounds, trained to follow the tracks of human beings, and were very reliable; that he had run them a great deal; that when Jim Dowdell came from his house out in the yard where they were, these dogs went to him immediately and reared up on him and barked, and "about that time some of Jim's dogs came from around the house and scared" these dogs away. He further testified: "Jim told me that it was all his cotton, and that he did not steal any of it. He said he had just come back from Mr. Methvin's store, which is about seven miles from where Jim lives. Mr. Stubbs lives about five miles from Jim's toward the other way. Jim lives between Mr. Stubbs and Methvin's store, and it is about twelve miles from R. H. Stubbs' house to Methvin's store. Jim Dowdell said that he left his house long before light, and was at Mr. Methvin's store at sunup. . . I put him in the car and carried him to Methvin's store, and when we got there Mr. Steve Roach, a white man, who clerks at Methvin's store, said that Jim reached the store that morning in the buggy about sunup or a little before, that he came in a buggy and came after a wagon to move his things." No additional testimony was introduced for the State.

Several witnesses testified that ten or twelve sacks of cotton were on the defendant's porch when the sheriff came there, and that some of the cotton had been picked about the first of the season, when it was white and clean. It was testified that all of it had been there at least several days before the sheriff came, and that all the cotton belonged to the defendant. Steve Roach testified that Jim Dowdell came to Methvin's store, about five or seven miles from where Jim lived, about sunup on the morning of December 16, 1919, and that he told Stubbs and the sheriff this on the same day, when they brought the defendant to the store. It was testified that on the preceding night the defendant was at a house several miles from where he lived, and left there in a buggy about one o'clock in the morning and went directly to his home. This was stated also in the defendant's statement at the trial; and he said that after arriving at home he remained

there until he went in his buggy to Methvin's store. He stated that all the cotton on the porch had been grown on his farm. It was testified that the sheriff sicked the dogs on him when they ran up to him.

*Hixon & Pace,* for plaintiff in error; cited: 22 *Ga. App.* 115, 552, 791-2.

*John B. Guerry, solicitor,* cited: 3 *Ga. App.* 609.